KOYO SEIKO CO., LTD. and Koyo Corporation of U.S.A., Plaintiffs,

v.

The UNITED STATES and the United States Department of Commerce, Defendants,

and

The Timken Company, Defendant–Intervenor.

Court No. 92–03–00169.
Slip Op. No. 94–123.

United States Court of International Trade.

July 29, 1994.

Powell, Goldstein, Frazer & Murphy, Peter O. Suchman, Susan P. Strommer, Niall P. Meagher and Elizabeth C. Hafner, Washington, DC, for plaintiffs, Koyo Seiko Co., Ltd. and Koyo Corp. of U.S.A.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis, Asst. Director; Linda S. Chang and Joan L. MacKenzie, Atty.–Advisors, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, of counsel, for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., William A. Fennell, Christopher J. Callahan and Patrick J. McDonough, Washington, DC, for defendant-intervenor, the Timken Co.

### OPINION

TSOUCALAS, Judge:

Plaintiffs, Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A. ("Koyo"), challenge certain aspects of the Department of Commerce, International Trade Administration's ("Commerce") final results of the second administrative review of certain tapered roller bearings ("TRBs") from Japan. *Tapered Roller Bearings, Finished and Unfinished, and Parts Thereof, From Japan; Final Results of Antidumping Duty Administrative Review ("Final Results")*, 57 Fed.Reg. 4,951 (Feb. 11, 1992).

#### Background

In 1987, Commerce published an antidumping duty order on TRBs from Japan. *Antidumping Duty Order; Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From Japan*, 52 Fed.Reg. 37,352 (Oct. 6, 1987). In 1991, Commerce published its final results of its first administrative review of TRBs covered by the 1987 order, covering the period March 27, 1987 through September 30, 1988. *Tapered Roller Bearings, Finished and Unfinished, and Parts Thereof, From Japan; Final Results of An-*

*tidumping Duty Administrative Review,* 56 Fed.Reg. 41,508 (Aug. 21, 1991). On February 11, 1992, Commerce published its final results in this proceeding, covering the period October 1, 1988 through September 30, 1989. *Final Results,* 57 Fed.Reg. 4,951.

Koyo moves pursuant to Rule 56.1 of the Rules of this Court for judgment on the agency record, alleging the following actions by Commerce were unsupported by substantial evidence on the agency record and not in accordance with law: (1) failure to use annualized weighted-average U.S. prices ("USPs") when it used annualized weighted-average foreign market values ("FMVs"); (2) failure to limit permissible deviation with a 10% "cap" on any single physical criterion in its model match methodology; (3) treatment of direct selling expenses as a reduction to U.S. price rather than an addition to foreign market value; (4) failure to prefer comparisons of U.S. and home market similar products sold at the same level of commercial trade to comparisons of U.S. and home market identical products sold at different levels of commercial trade; (5) treatment of home market post-sale price adjustments as indirect selling expenses while treating U.S. discounts as direct selling expenses; (6) treatment of home market warranty expenses as indirect selling expenses; and (7) failure to make circumstance of sale adjustments to constructed value. *Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Judgment on the Agency Record ("Koyo's Brief")* at 9–54.

### *Discussion*

The Court's jurisdiction over this matter is derived from 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581(c) (1988).

■ A final determination by Commerce in an administrative proceeding will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Found-*

*ry Co. v. United States,* 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

### 1. *Averaged FMV*

■ Koyo alleges Commerce inappropriately compared averages of FMV representing home market sales over a twelve-month period with actual U.S. prices, instead of with similarly averaged U.S. prices. *Koyo's Brief* at 9–21.

Koyo maintains such an inherently unfair comparison between individual prices and averaged prices distorts the dumping margins calculated and is contrary to the antidumping statute. *Id.* at 10–18. Citing the provision permitting Commerce to average U.S. prices and asserting that U.S. prices were as stable as FMVs, Koyo argues that Commerce abused its discretion by not averaging U.S. prices and thereby inflating Koyo's dumping margins in this comparison. *Id.* Koyo argues Commerce's creation of certain annual average prices based on only a few home market sales further distorts the dumping margins. *Id.* at 18–20.

Commerce maintains it acted within its discretion and in accordance with the statutory scheme, which does not require it to average USP whenever it decides to average FMV. *Defendants' Memorandum in Partial Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record ("Defendants' Brief")* at 9–21. Commerce asserts that to prevent the masking of dumping, it followed its long-standing practice of averaging USP only when perishable products are sold at distress prices as a result of necessity and not of unfair competition. *Id.* at 11–15. Commerce argues its averaging was reasonable as the home market prices over the entire review period were stable. *Id.* at 18–21.

Defendant-intervenor, The Timken Company ("Timken"), echoes the arguments made by Commerce. *The Timken Company's Response to Plaintiffs' Motion for Judgment on the Agency Record and Memorandum in Support Thereof ("Timken's Brief")* at 18–30.

The statute at issue here grants Commerce exclusive discretion to use averaging

techniques as long as a significant volume of sales is involved and the averaging is representative:

> [T]he administering authority may—
>
>> (1) use averaging or generally recognized sampling techniques whenever a significant volume of sales is involved or a significant number of adjustment to prices is required, and
>>
>> (2) decline to take into account adjustments which are insignificant in relation to the price or value of the merchandise.
>
> **(b) Selection of samples and averages**
>
> The authority to select appropriate samples and averages shall rest exclusively with the administering authority; but such samples and averages shall be representative of the transactions under investigation.

19 U.S.C. § 1677f–1 (1988). There is no provision that requires Commerce to average USP once it has averaged FMV.

In the case at hand, Commerce conducted two studies to ensure the averaging of FMV would be representative. *Final Results*, 57 Fed.Reg. at 4,959. That there was a significant volume of sales involved is not at issue. Thus, Commerce's decision to average foreign market value was in accordance with law.

Acting within its discretion, Commerce declined Koyo's invitation to average USP: "[Averaging USP] would allow a foreign producer to mask dumping margins by offsetting dumped prices with prices above FMV.... Except in instances where the Department has conducted reviews of seasonal merchandise which has very significant price fluctuations due to perishability ..., the idea of averaging U.S. prices has been rejected." *Id.*

This Court has already decided this issue and adheres to its decisions in *Koyo Seiko Co. and Koyo Corp. of U.S.A. v. United States*, 17 CIT ——, 834 F.Supp. 431 (1993) and *Koyo Seiko Co. and Koyo Corp. of U.S.A. v. United States*, 17 CIT ——, 840

F.Supp. 136 (1993), *aff'd*, 20 F.3d 1156 (Fed. Cir.1994), wherein this Court held the averaging of FMVs without any averaging of USP not to be an abuse of discretion. Therefore, the determination of Commerce as to this issue is affirmed.

### 2. *Model Match Methodology*

Koyo argues that, for purposes of calculating dumping margins, Commerce compared dissimilar merchandise because it did not impose a ten percent limit upon deviation from the five-criterion model match methodology ("sum of the deviations" methodology) for selecting the most similar home market TRB model, as it did in the original investigation in this proceeding. *Koyo's Brief* at 21–32. Koyo alleges that, in failing to impose this ten percent "cap" on each physical criterion, Commerce abdicated its statutory responsibility to make price comparisons only between U.S. and home market products that provide a reasonable basis for reaching a fair dumping determination and that are comparable in commercial value, alike in component materials or at least in the purposes for which used. *Id.* at 32.

Commerce asserts that when identical merchandise is not available in the home market for comparison with the merchandise sold in the United States, it is for Commerce to choose "similar" merchandise based upon the physical characteristics of the merchandise being compared. *Defendants' Brief* at 21–38. Commerce argues that it has been granted broad discretion to devise a methodology for determining "similar" merchandise and that the Court should not substitute its own construction of the statute for Commerce's reasonable interpretation of the statute. *Defendants' Brief* at 22–35. Timken reiterates the arguments made by defendants. *Timken's Brief* at 31–40.

19 U.S.C. § 1677(16) (1988) is the relevant provision.[1] It does not specify the methodol-

---

1. 19 U.S.C. § 1677(16) (1988) provides:

 The term "such or similar merchandise" means merchandise in the first of the following categories in respect of which a determination for the purposes of part II of this subtitle can be satisfactorily made:

 (A) The merchandise which is the subject of an investigation and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, that merchandise.

 (B) Merchandise—

ogy which is to be used and, indeed, Commerce has been granted broad discretion to devise a methodology for determining what constitutes "similar" merchandise. *See Smith–Corona Group, Consumer Prods. Div., SCM Corp. v. United States*, 713 F.2d 1568, 1571 (Fed.Cir.1983), *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984).

■ In this review, Commerce compared home market sales of TRBs to U.S. sales according to five physical characteristics criteria, determining a "similar" bearing by computing a single factor, the "sum of the deviations," which is based on differences between the U.S. and home market bearings. *Final Results*, 57 Fed.Reg. at 4,952.

An accurate investigation requires that the merchandise used in the comparison be as similar as possible. Furthermore, as plaintiffs correctly maintain, there is a statutory preference for comparison of most similar, if not identical merchandise for the purpose of FMV calculations. 19 U.S.C. § 1677(16); *see Timken Co. v. United States*, 10 CIT 86, 96, 630 F.Supp. 1327, 1336 (1986). Undoubtedly, the ITA's fundamental objective in an anti-dumping investigation is to compare the United States price of imported merchandise with the value of "such or similar merchandise" sold in the foreign market. *Timken*, 10 CIT at 95, 630 F.Supp. at 1336.

This Court recently ruled on this issue in *Koyo Seiko Co.*, 17 CIT at ——, 834 F.Supp. at 434–35, stating that Commerce's methodology "must be used in conjunction with the ten percent cap to limit the permissible deviation of the criteria used to make TRB models." *Id.* at ——, 834 F.Supp. at 435. The use of a ten percent cap avoids comparisons between products which differ so dramatically that they simply cannot be considered commercially similar. *Id.* More recently, this Court adhered to this decision in *NTN*

*Bearing Corp. of America, American NTN Bearing Mfg. Corp. and NTN Corp. v. United States*, 17 CIT ——, ——, 835 F.Supp. 646, 648 (1993); *appeal after remand, dismissed*, 18 CIT ——, 843 F.Supp. 737 (1994).

The Court adheres to its earlier decisions and, therefore, this case is remanded to Commerce to impose a 10% limit upon deviation from the five-criterion model match methodology used in the final results for selecting the most similar home market TRB model.

### 3. *U.S. Direct Selling Expenses*

■ Koyo asserts Commerce erred in treating Koyo's U.S. direct selling expenses as a reduction to U.S. price rather than an addition to foreign market value. Koyo states direct selling expenses should be added to FMV as a matter of law and Commerce acted contrary to explicit direction from this Court in deducting them from USP. Deducting direct selling expenses from USP, Koyo asserts, inflates the weighted-average margin and leads to a distortion of dumping margins. *Koyo's Brief* at 33–34.

While conceding that this Court has ruled adversely to its position on this point, Commerce contends it has acted consistently with 19 U.S.C. § 1677a(e)(2) (1988), rather than adding direct selling expenses to FMV pursuant to the circumstance of sale adjustment contained in 19 U.S.C. § 1677b(a)(4)(B) (1988). Commerce asserts that the deduction of direct selling expenses from USP will result in a more accurate assessment of dumping duties and that 19 U.S.C. § 1677a(e)(2) does not limit the deduction of expenses to the deduction of indirect selling expenses. Commerce states there has been no opportunity to appeal any of this Court's rulings on this matter and, consequently, maintains its position. *Defendants' Brief* at 38–45.

(i) produced in the same country and by the same person as the merchandise which is the subject of the investigation,

(ii) like that merchandise in component material or materials and in the purposes for which used, and

(iii) approximately equal in commercial value to that merchandise.

(C) Merchandise—

(i) produced in the same country and by the same person and of the same general class or kind as the merchandise which is the subject of the investigation,

(ii) like that merchandise in the purposes for which used, and

(iii) which the administering authority determines may reasonably be compared with that merchandise.

Timken agrees with Commerce's methodology arguing it yields the same dumping duties and reconciles the two statutory provisions at issue. *Timken's Brief* at 41–47.

According to 19 U.S.C. § 1677a(e), "the exporter's sale price shall be adjusted by being reduced by the amount, if any, of ... expenses generally incurred by or for the account of the exporter in the United States in selling identical or substantially identical merchandise."

The Court of Appeals for the Federal Circuit has interpreted that provision as referring only to indirect selling expenses and not direct selling expenses. *Consumer Prods. Div., SCM Corp. v. Silver Reed America,* 753 F.2d 1033, 1036–38 (Fed.Cir.1985).

This issue has once again unnecessarily consumed the Court's time as the Court has consistently held that "direct selling expenses are properly characterized as differences in circumstances of sale giving rise to an adjustment of FMV." *E.g., NSK Ltd. v. United States,* 17 CIT ——, ——, 819 F.Supp. 1096, 1099 (1993), *mot. denied, dismissed,* 17 CIT ——, 825 F.Supp. 315 (1993); *see also NTN Bearing Corp. of America v. United States,* 14 CIT 623, 637, 747 F.Supp. 726, 738–39 (1990); *see also Timken Co. v. United States,* 11 CIT 786, 800, 673 F.Supp. 495, 509 (1987).

Although the law is clear on this issue, Commerce repeatedly ignores the law and disobeys the decisions of this Court. *See, e.g., NSK Ltd.,* 17 CIT at ——, 819 F.Supp. at 1099. This Court has repeatedly cautioned Commerce that it is to adhere to the law and to the decisions of this Court or this Court will be compelled to order sanctions against the government. *See, e.g., id.*

Absent any contrary authority, this Court adheres to the abundance of case law on this issue and, therefore, this case is remanded to Commerce to add direct selling expenses to FMV rather than deducting them from USP.

### 4. *Comparison of Sales Across Different Levels of Trade*

■ Koyo alleges that in choosing such or similar sales for comparison, Commerce disregarded 19 C.F.R. § 353.58 (1992) by comparing sales across different levels of trade when sales at the same level of trade were available. *Koyo's Brief* at 35–41. Koyo states that it makes sales in the U.S. and Japan at two significantly different levels of trade—to original equipment manufacturers and to the aftermarket for replacement parts. *Id.* at 35–36. Koyo asserts that Commerce improperly and unfairly considered sales of identical merchandise at different levels of trade *before* considering sales of the most similar merchandise at the same level of trade. *Id.* at 36–37. Koyo maintains that this methodology is contrary to the statute and regulation, which require Commerce to search for comparisons of sales at the same level of trade before crossing over to compare sales at a different level of trade. *Id.* at 37–39.

Defendants defend Commerce's methodology as consistent with law and with prior decisions of this Court which state level of trade is not a requirement for selecting such or similar merchandise. *Defendants' Brief* at 45–49. Commerce asserts that it first searched for identical merchandise at the same level of trade and then at different levels of trade, making adjustments for differences that affect price comparability across different levels of trade. *Id.* at 45–46. Timken agrees with defendants' arguments. *Timken's Brief* at 48–53.

19 C.F.R. § 353.58 states that Commerce "normally will calculate foreign market value and United States price based on sales at the same commercial level of trade." If such sales are insufficient for an adequate comparison, Commerce must calculate FMV "based on sales of such or similar merchandise at the most comparable commercial level of trade as sales of the merchandise and make appropriate adjustments for differences affecting price comparability." *Id.*

Based upon data submitted by Koyo regarding the existence of two levels of trade, Commerce initially attempted to make its comparison of sales at the same level of trade and, when no identical home market sales were discovered, Commerce then searched the next level of trade for identical merchandise. Commerce then searched the same level of trade for most similar merchandise

and, finally, the next level of trade for most similar merchandise. *Defendants' Brief* at 45–46. Therefore, Koyo's argument that Commerce failed to fulfill its obligation to search the same level of trade is erroneous.

This Court has on several occasions affirmed Commerce's selection of home market merchandise at levels of trade different from the U.S. merchandise to which it is compared. *Koyo Seiko Co. v. United States,* 16 CIT 539, 545, 796 F.Supp. 1526, 1532 (1992), *vacated, remanded,* 16 CIT 788, 806 F.Supp. 1008 (1992); *NTN Bearing Corp. of America v. United States,* 14 CIT 623, 634, 747 F.Supp. 726, 736 (1990); *Timken Co.,* 11 CIT at 793, 673 F.Supp. at 504.

In addition, this Court has previously specifically rejected the argument put forth by Koyo: "there is no statutory mandate requiring Commerce to remain within the same level of trade while effecting its 'such or similar merchandise' determination. [Citation omitted.] Plaintiffs, therefore, have no basis for requesting that the Court require Commerce to limit its comparisons by the level of trade in which the sales occur." *NTN Bearing Corp.,* 14 CIT at 634, 747 F.Supp. at 736.

Therefore, Commerce's comparison of sales across different levels of trade was reasonable and in accordance with law.

■ Koyo also contends that Commerce's methodology is contrary to Article 2(6) of the Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade ("GATT") (1979). *Koyo's Brief* at 39–40.

Article 2(6) of the GATT, titled "Determination of Dumping," states that, in the context of price comparisons in antidumping proceedings, prices "shall be compared at the same level of trade" and "[d]ue allowance shall be made in each case, on its merits, for the differences in conditions and terms of sale, for the differences in taxation, and for the other differences affecting price comparability."

This Court has already addressed this very issue in *Koyo Seiko Co. and Koyo Seiko Corp. of U.S.A. v. United States,* 17 CIT ——, ——, 810 F.Supp. 1287, 1290–91, wherein the Court held first, that compliance with this GATT provision does not require comparison of sales at the same level of trade since the provision itself clearly makes exception and allows for the adjustment of prices when sales are made under different terms and conditions and, second, that even if Commerce's methodology was contrary to this provision, domestic law, not the GATT, is controlling. The Court has been presented with no new argument and adheres to its previous decision regarding this issue.

Therefore, Commerce's comparison of merchandise across different levels of trade is affirmed.

### 5. *Home Market Post–Sale Price Adjustments and U.S. Discounts*

In its brief, Koyo argues Commerce erred in treating Koyo's home market post-sale price adjustments as indirect selling expenses. *Koyo's Brief* at 41–48. In its *Reply of Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A. to Oppositions to Plaintiffs' Motion for Judgment on the Agency Record* ("*Reply Brief*"), Koyo withdraws its claim for treatment of home market post-sale price adjustments, as discussed with counsel for defendants and Timken. *Reply Brief* at 2. Accordingly, this Court will not further address this issue.

■ Koyo also argues that Commerce erred in treating U.S. discounts as direct selling expenses. *Koyo's Brief* at 45–48. Koyo maintains it was an abuse of discretion for Commerce to treat U.S. discounts differently from home market post-sale price adjustments since U.S. discounts were granted and reported on virtually the same basis as were home market post-sale price adjustments. *Id.* Koyo asserts fairness requires that these costs be treated in the same manner in both markets. *Id.* at 46. According to Koyo, different treatment will result in a distorted comparison and the creation or widening of dumping margins on some sales. *Id.* at 47.

Timken responds that Commerce properly made an adverse assumption and treated U.S. discounts as direct expenses, given that Koyo failed to provide sufficient information

demonstrating its adjustment was indirect and that it is to Koyo's advantage to have U.S. discounts treated as indirect expenses. *Timken's Brief* at 60–61.

This Court finds that Koyo's arguments are without merit. It is established that U.S. selling expenses are presumed to be direct and the burden of proving otherwise is on the respondent. *Timken Co. v. United States,* 11 CIT 786, 804, 673 F.Supp. 495, 512–13 (1987); *see also Torrington Co. v. United States,* 17 CIT ——, ——, 832 F.Supp. 365, 376, 378 (1993); *see also Tapered Roller Bearings, Finished and Unfinished, and Parts Thereof, From Japan; Final Results of Antidumping Duty Administrative Review,* 57 Fed.Reg. 4,951, 4,955 (Feb. 11, 1992); *see also Tapered Roller Bearings, Four Inches or Less in Outside Diameter, and Certain Components Thereof, From Japan; Final Results of Antidumping Duty Administrative Review,* 56 Fed.Reg. 65,228, 65,229 (Dec. 16, 1991).

A contrary practice would destroy any incentive a respondent has to provide Commerce with actual U.S. selling expense information. *Torrington Co.,* 17 CIT at ——, 832 F.Supp. at 376. An indirect U.S. selling expense can be "offset" by home market indirect selling expenses. 19 C.F.R. § 353.-56(b)(2) (1992). Such an offset, which is not permitted with U.S. selling expenses classified as direct, increases allowable deductions from foreign market value and reduces dumping margins. It would therefore be to the respondent's advantage to fail to provide Commerce with information directly relating U.S. selling expenses to sales of covered merchandise. *Timken Co.,* 11 CIT at 804, 673 F.Supp. at 513.

As Koyo has failed to overcome the presumption that the U.S. discounts and rebates are direct selling expenses, this issue is hereby affirmed.

### 6. *Home Market Warranty Expenses*

In its brief, Koyo argues Commerce erred in treating Koyo's home market warranty expenses as indirect selling expenses. *Koyo's Brief* at 48–50. In its *Reply Brief,* Koyo withdraws its claim for treatment of home market warranty expenses as direct

selling expenses. *Reply Brief* at 2. Accordingly, this Court will not further address this issue.

### 7. *Circumstance of Sale Adjustments to Constructed Value*

Koyo states Commerce erred in failing to make circumstance of sale adjustments to constructed value. *Koyo's Brief* at 50–54. Koyo alleges that, when FMV was based on constructed value, Commerce declined to deduct Koyo's direct selling expenses, claiming Koyo did not properly describe the expenses and treating them instead as indirect selling expenses. *Id.* at 50. Koyo states it was improper of Commerce to do so, since Commerce neither requested that Koyo provide this information nor informed Koyo that the information it provided was deficient. *Id.* Koyo argues that, pursuant to the antidumping statute, Commerce is required to make circumstance of sale adjustments to constructed value as constructed value is one form of FMV. *Id.* at 51. Koyo further objects on the grounds that Commerce's treatment of the selling expenses at issue as indirect is equivalent to the punitive use of best information available. *Id.* at 52–54.

Defendants contend Commerce properly rejected Koyo's request for treatment of the expenses as circumstance of sale adjustments because Koyo did not quantify the amount of direct selling expenses attributable to commissions and credit. *Defendants' Brief* at 54–55. Defendants state, pursuant to Commerce's regulations, any party claiming a circumstance of sale adjustment must establish its claim to Commerce's satisfaction. *Id.* Since Koyo did not, defendants assert Commerce properly characterized the expenses as indirect and Koyo's argument equating this treatment with use of best information available is without merit. *Id.* Timken agrees with defendants' arguments. *Timken's Brief* at 65–68.

■ Plaintiff is quite correct that Commerce is required to make circumstance of sale adjustments to all forms of foreign market value, including constructed value, in order to achieve a fair comparison. *Timken Co. v. United States,* 11 CIT 786, 797, 673

F.Supp. 495, 507 (1987); 19 U.S.C. § 1677b(a)(4)(B) (1988).[2] However, whether an expense is deemed a circumstance of sale adjustment is at the discretion of Commerce. 19 U.S.C. § 1677b(a)(4) ("if it is established to the satisfaction of the administering authority"); *see also* 19 C.F.R. § 353.54 (1992). Courts have concluded Commerce enjoys broad discretion to employ circumstance of sale adjustments. *See, e.g., Smith–Corona Group, Consumer Prod. Div., SCM Corp. v. United States,* 713 F.2d 1568, 1575 (Fed.Cir. 1983).

 Therefore, Commerce acted within its discretion when it decided not to make a circumstance of sale adjustment to constructed value, characterizing the expenses at issue as indirect selling expenses, and this issue is hereby affirmed.

*Conclusion*

In accordance with the foregoing opinion, this case is remanded to Commerce for imposition of a 10% limit upon deviation from the five-criterion model match methodology used in the final results for selecting the most similar home market TRB model and for addition of direct selling expenses to foreign market value rather than their deduction from United States price. Commerce's determination is affirmed in all other respects. Remand results are due within ninety (90) days of the date this opinion is entered. Any comments or responses are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.

**2.** In relevant part, 19 U.S.C. § 1677b(a)(4) states:
In determining foreign market value, if it is established to the satisfaction of the administering authority that the amount of any difference between the United States price and the foreign market value ... is wholly or partly due to—

(B) other differences in circumstances of sale ... then due allowance shall be made therefor.