**KOYO SEIKO CO., LTD. and Koyo Corporation of U.S.A., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**The Timken Company, Defendant–Intervenor.**

Court No. 92–01–00047.
Slip Op. 93–87.

United States Court of
International Trade.

June 1, 1993.

Powell, Goldstein, Frazer & Murphy, Peter O. Suchman, Susan P. Strommer, Niall P. Meagher and Elizabeth C. Hafner, Washington, DC, for plaintiffs.

Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis (Joan L. MacKenzie, Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel) Washington, DC, for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., John M. Breen and Margaret E.O. Edozien, Washington, DC, for defendant-intervenor.

## OPINION

TSOUCALAS, Judge:

Plaintiffs, Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A. ("Koyo"), move pursuant to Rule 56.1 for judgment on the agency record contesting the Department of Commerce, International Trade Administration's ("Commerce") final results in *Tapered Roller Bearings, Four Inches or Less in Outside Diameter, and Certain Components Thereof, From Japan; Final Results of Antidumping Duty Administrative Review* ("*Final Results*"), 56 Fed.Reg. 65,228 (1991). Plaintiffs specifically object to (1) Commerce's failure to average U.S. prices in the same manner as it averaged foreign market values, (2) Commerce's decision to reclassify plaintiffs' home market post-sale price adjustments, rebates and warranty expenses as indirect selling expenses, and (3) Commerce's methodology used to compare levels of trade.

In April of 1991, Commerce published the preliminary results of its administrative review of tapered roller bearings ("TRBs") covering the period from August 1, 1988 through July 31, 1989. *Tapered Roller Bearings, Four Inches or Less in Outside Diameter, and Components Thereof, from Japan; Preliminary Results of Anti-dumping Duty Administrative Review*, 56 Fed.Reg. 14,924 (1991). On December 16, 1991, Commerce published the final results of its administrative review, which are the subject of this action. *Final Results*, 56 Fed.Reg. 65,228.

## DISCUSSION

■ In reviewing a final determination of Commerce, this Court must uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988 & Supp.1992). Substantial evidence has been defined as being "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). It is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States*, 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd*, 894 F.2d 385 (Fed.Cir.1990).

### 1. Averaging of U.S. Prices

■ In its administrative review, Commerce compared individual U.S. sales prices of TRBs with an annualized, weighted-average foreign market value. Koyo claims that Commerce's failure to average U.S. prices in the same manner as it averaged foreign market values was an abuse of discretion and now asks the Court to remand this case to Commerce with instructions to average U.S. prices and foreign market value on the same basis. According to 19 U.S.C. § 1677f-1(a) (1988 & Supp.1993):

For the purpose of determining United States price or foreign market value under sections 1677a and 1677b of this title, and for purposes of carrying out annual reviews under section 1675 of this title, the administering authority may—

(1) use averaging or generally recognized sampling techniques whenever a significant volume of sales is involved or a significant number of adjustments to prices is required, and

(2) decline to take into account adjustments which are insignificant in relation to the price or value of the merchandise.

**(b) Selection of samples and averages**
The authority to select appropriate samples and averages shall rest exclusively with the administering authority; but such

samples and averages shall be representative of the transactions under investigation.

Thus, the statute states that Commerce may use averaging techniques "whenever a significant volume of sales is involved or a significant number of adjustments to prices is required." *Id.* Furthermore, the statute grants Commerce exclusive authority to do so as long as the averaging is representative. *Id.*

In the case at hand, before applying averaging techniques to foreign market value, Commerce conducted two studies to insure that the transactions and the results produced would be representative. *Final Results,* 56 Fed.Reg. at 65,230–31. Commerce stated:

> First, we compared the monthly weighted-average price to the annual weighted-average price. We found that the annual weighted-average price for more than 90 percent of the products sold was within 10 percent of the monthly weighted-average price. Second, we tested whether home market prices of the subject merchandise consistently rose or fell during the period of review. We found that no significant correlation existed between price and time. That is, prices did not consistently rise or fall so as to make annual weighted-average prices unrepresentative of home market prices.

*Id.* at 65,230.

▮▮▮ Thus, Commerce's decision to average foreign market value was reasonable and representative. Koyo also claims, however, that since Commerce averaged foreign market value then it also should have averaged United States price. The statute, however, gives no indication that Commerce must average both sides of the equation. Furthermore, Commerce stated in its Final Results that since the merchandise under review "is not a perishable product, and our tests of home market sales revealed that there are no significant price fluctuations, there is no reason to believe that averaging of U.S. prices is needed to account for very significant price fluctuations." *Id.* at 65,231. Thus, Commerce was justified in not averaging U.S. prices and the determination of Commerce as to this issue is hereby affirmed.

### 2. Indirect Selling Expenses

Koyo also contests Commerce's treatment of Koyo's post-sale price adjustments, rebates and warranties as indirect selling expenses rather than directly adjusting foreign market value for these adjustments. At the oral argument held on April 22, 1993, however, counsel for Koyo stated that it had changed its position and conceded this issue. Therefore, Commerce's decision to treat Koyo's post sale price adjustments, rebates and warranties as indirect selling expenses is affirmed.

### 3. Levels of Trade

Finally, Koyo contests Commerce's methodology used to compare TRB models at different levels of trade. Koyo argues that Commerce erred in comparing U.S. and home market TRB models sold at different levels of trade and that the case should be remanded with instructions to Commerce to modify its methodology to ensure that U.S. and home market sales are only compared at the same level of trade. Koyo claims that Commerce's comparison of U.S. and home market sales "across different levels of trade" is not supported by substantial evidence and is contrary to law. Koyo's argument is meritless.

During the review, Commerce initially attempted to make its comparison of sales at the same level of trade and when no identical home market sales were discovered, Commerce then searched the same level of trade for sales of the next similar model before searching the next level of trade for identical merchandise. Therefore, Koyo's argument that Commerce failed to fulfill its obligation to search the same level of trade for comparison of U.S. and home market sales is erroneous.

▮▮▮ There is no statutory requirement that Commerce make a level-of-trade adjustment when comparing sales at different levels of trade. Furthermore, this Court on several occasions has affirmed Commerce's selection of most similar merchandise sold in the home market when alternative levels were unavailable. *See Koyo Seiko Co. v.*

*United States,* 17 CIT ——, 810 F.Supp. 1287 (1993); *Timken Co. v. United States,* 10 CIT 86, 630 F.Supp. 1327 (1986); *NTN Bearing Corp. of America v. United States,* 14 CIT 623, 747 F.Supp. 726, (1990); *Timken Co. v. United States,* 11 CIT 786, 673 F.Supp. 495 (1987); *Koyo Seiko Co. v. United States,* 16 CIT ——, ——, 796 F.Supp. 1526 (1992).

This Court refused to recognize a "level of trade" argument similar to Koyo's in *NTN Bearing Corp.,* 14 CIT at 634, 747 F.Supp. at 736, stating:

> With respect to plaintiffs' contention that the ITA's disregard of levels of trade differences is contrary to law, plaintiffs have not provided, nor has the court uncovered any support for this argument. To the contrary, this court has noted previously that there is no statutory mandate requiring Commerce to remain within the same levels of trade while effecting its "such or similar merchandise" determination. [Citations omitted.] Plaintiffs, therefore, have no basis for requesting that the Court require Commerce to limit its comparisons by the level of trade in which the sales occur.

Thus, Commerce's comparison of sales across different levels of trade was in accordance with law.

■ Koyo also argues that Commerce's methodology is contrary to Article 2(6) of the Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade ("GATT") (1979).

Article 2(6) of the GATT, titled "Determination of Dumping," specifies that:

> In order to effect a fair comparison between the export price and the domestic price in the exporting country (or the country of origin) or, if applicable, the price established pursuant to the provisions of Article VI:1(b) of the General Agreement, the two prices shall be compared at the same level of trade, normally at the exfactory level, and in respect of sales made at as nearly as possible the same time. *Due allowance* shall be made in each case, on its merits, for the differences in conditions and terms of sale, for the differences in taxation, and for the other differences affecting price comparability.

*Id.* (emphasis added).

Koyo argues that compliance with the GATT mandates comparison of sales at the same level of trade. The GATT places no such limitation on Commerce's selection of comparison merchandise. The statutory provision itself clearly makes exception and allows for the adjustment of prices when sales are made under different terms and conditions which shall have effect on the price comparability. Therefore, the discretion of the regulating authorities is clearly permitted and codified within this provision. *See Koyo Seiko,* 17 CIT ——, 810 F.Supp. 1287.

■ Koyo argues that Commerce's methodology is contrary to this Article. Even if it was, the Court of Appeals for the Federal Circuit recently stated in *Suramerica de Aleaciones Laminadas, C.A. v. United States,* 966 F.2d 660 (Fed.Cir.1992), that our domestic law, not the GATT, governs. The court stated:

> [E]ven if we were convinced that Commerce's interpretation conflicts with the GATT, . . . the GATT is not controlling. While we acknowledge Congress's interest in complying with U.S. responsibilities under the GATT, we are bound not by what we think Congress should or perhaps wanted to do, but by what Congress in fact did. The GATT does not trump domestic legislation; if the statutory provisions at issue here are inconsistent with the GATT, it is a matter for Congress and not this court to decide and remedy.

*See id.* at 667; *see also Algoma Steel Corp. v. United States,* 865 F.2d 240, 242 (Fed.Cir. 1989), *cert. denied,* 492 U.S. 919, 109 S.Ct. 3244, 106 L.Ed.2d 590 (1989).

■ Therefore, as long as the construction is reasonable and fair, Commerce's interpretation is permissible. *See Suramerica,* 966 F.2d at 665; *see also Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 866, 104 S.Ct. 2778, 2793, 81 L.Ed.2d 694 (1984).

Thus, Commerce's comparison of merchandise across different levels of trade is af-

firmed as reasonable and in accordance with law.

CONCLUSION

In accordance with the foregoing opinion, plaintiffs' motion for judgment on the agency record is denied in all respects as Commerce's averaging techniques and its comparison of merchandise across different levels of trade were reasonable and in accordance with law. Furthermore, regarding Commerce's decision to treat Koyo's post-sale price adjustments, rebates and warranties as indirect selling expenses, counsel for Koyo stated at oral argument that it had changed its position and conceded this issue. Therefore, Commerce's determination is affirmed in all respects and this case is hereby dismissed.