KOYO SEIKO CO., LTD. AND KOYO CORP OF U.S.A., PLAINTIFFS *v.*
UNITED STATES, DEFENDANT, AND TIMKEN CO., DEFENDANT-INTERVENOR

Court No. 91–07–00495

(Dated September 9, 1993)

*Powell, Goldstein, Frazer, & Murphy (Peter O. Suchman, Susan P. Strommer, Niall P. Meagher, D. Christine Wood, Susan E. Silver, Elizabeth C. Hafner* and *Susan M. Mathews)* for plaintiffs.
*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial litigation Branch, Civil Division, U.S. Department of Justice *(Michael S. Kane);* of counsel: *Joan L. MacKenzie* and *Stephen Claeys,* Attorney-Advisors, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.
*Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., John M. Breen, Margaret E.O. Edozien* and *Lane S. Hurewitz),* for defendant-intervenor The Timken Company.

## OPINION

TSOUCALAS, *Judge:* Plaintiffs, Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A. ("Koyo"), move pursuant to Rule 56.1 of the Rules of this Court for judgment on the agency record contesting the Department of Commerce, International Trade Administration's ("Commerce") final results in *Tapered Roller Bearings, Four Inches or Less in Outside Diameter and Certain Components Thereof From Japan; Final Results of Antidumping Duty Administrative Review* ("Final Results"), 56 Fed. Reg. 26,054 (1991). Plaintiffs specifically object to Commerce's (1) failure to average U.S. price in the same manner as it averaged foreign market value; (2) decision to reclassify plaintiffs' home market post-sale price adjustments, rebates and warranty expenses as indirect selling expenses; (3) use of "best information available" in place of plaintiffs' calculation of home market credit expenses; (4) rejection of Koyo's separate home market selling expenses incurred by its related distributors on the sales they made; and (5) rejection of Koyo's cost of production information.

On December 13, 1990, Commerce published the preliminary results of its administrative review of tapered roller bearings ("TRBs") cover-

ing the period from August 1, 1987 through July 31, 1988. *Tapered Roller Bearings Four Inches or Less in Outside Diameter and Certain Components Thereof From Japan; Preliminary Results of Antidumping Duty Administrative Review*, 55 Fed. Reg. 51,308 (1990). On June 6, 1991, Commerce published the final results of its administrative review, which are the subject of this action. *Final Results*, 56 Fed. Reg. 26,054.

## DISCUSSION

In reviewing a final determination of Commerce, this Court must uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence has been defined as being "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States*, 12 CIT 955, 962, 699 F. Supp. 300, 306 (1988), *aff'd*, 894 F.2d 385 (Fed. Cir. 1990).

### 1. *Averaging of U.S. Prices:*

In its administrative review, Commerce compared individual U.S. sales prices of TRBs with an annualized, weighted-average foreign market value. Koyo claims that Commerce's failure to average U.S. price in the same manner as it averaged foreign market value was an abuse of discretion and now asks the Court to remand this case to Commerce with instructions to average U.S. price and foreign market value on the same basis.

According to 19 U.S.C. § 1677f–1 (1988 & Supp. 1993):

> For the purpose of determining United States price or foreign market value under sections 1677a and 1677b of this title, and for purposes of carrying out annual reviews under section 1675 of this title, the administering authority may—
>
> > (1) use averaging or generally recognized sampling techniques whenever a significant volume of sales is involved or a significant number of adjustments to prices is required, and
> > (2) decline to take into account adjustments which are insignificant in relation to the price or value of the merchandise.
>
> **(b) Selection of samples and averages**
> The authority to select appropriate samples and averages shall rest exclusively with the administering authority; but such samples and averages shall be representative of the transactions under investigation.

Thus, the statute states that Commerce may use averaging techniques "whenever a significant volume of sales is involved or a significant number of adjustments to prices is required." *Id.* Furthermore, the

statute grants Commerce exclusive authority to do so as long as the averaging is representative. *Id.*

In the case at hand, before applying averaging techniques to foreign market value, commerce conducted two studies to insure that the transactions and the results produced would be representative. *Final Results,* 56 Fed. Reg. at 26,057. Commerce stated:

> First, we compared the monthly weighted-average price to the annual weighted-average price. We found that the annual weighted-average price for more than 90 percent of the products sold came within 10 percent of the monthly weighted-average price. Second, we tested whether home market prices of the subject merchandise consistently rose or fell during the period of review. We found that no significant correlation existed between price and time. That is, prices did not consistently rise or fall so as to make annual weighted-average prices unrepresentative of home market prices. Therefore, the results of these tests demonstrate that Koyo's pricing practices remained stable during the review period, thus insuring that an annual weighted-average FMV is as representative of home market prices as the traditional monthly weighted-average FMV.

*Id.*

Thus, Commerce's decision to average foreign market value was reasonable and representative. Koyo asserts it "has no objection *per se* to the use of annualized weighted-average foreign market values" but that since Commerce did so it also should have averaged U.S. price. *See Plaintiffs' Motion for Judgment on the Agency Record ("Plaintiffs' Motion")* at 10 n.3. The statute, however, gives no indication that commerce must average both sides of the equation. In fact, Commerce stated in its Final Results that:

> An average U.S. price has been, and continues to be, unacceptable, because it would allow a foreign producer to mask dumping margins by offsetting dumped prices with prices above FMV. * * * Except in instances where the Department has conducted reviews of seasonal merchandise which has very significant price fluctuations due to perishability * * *, the idea of averaging U.S. prices has been rejected. Since the merchandise under review is not a perishable product, there is no reason to believe that averaging of U.S. prices is needed to take into account very significant price fluctuations.

*Id.* at 26,057–58.

These same issues were presented in *Koyo Seiko Co., Ltd. v. United States,* 17 CIT 474, 840 F. Supp. 136 (1993), where this Court upheld Commerce's use of the annualized weighted-average technique only for foreign market value and not for U.S. price. The Court finds no difference between the two cases and thus concludes that Commerce was justified in not averaging U.S. prices. The determination of Commerce as to this issue is hereby affirmed.

## 2. *Indirect Selling Expenses:*

Koyo also contests Commerce's treatment of Koyo's post-sale price adjustments, rebates and warranties as indirect selling expenses rather than directly adjusting foreign market value for these adjustments.

Koyo claims that the Department erred in the Final Results by including its home market rebates in the pool of home market indirect selling expenses rather than adjusting home market price directly. Koyo feels that since price adjustments are revisions or corrections to price, not circumstances of sale adjustments (which are generally based on elements of cost—i.e., advertising, technical services and commissions), the adjustments should be directly applied to the home market sales price rather than treated as indirect selling expenses. *Plaintiffs' Motion* at 15.

The Court of Appeals for the Federal Circuit has stated on this issue that in order for a discount or rebate to qualify as a direct cost to be subtracted from FMV, the discount or rebate must have been actually paid on all of the sales under consideration and allocated on the basis of actual cost and sales figures. *Smith-Corona Group v. United States,* 713 F.2d 1568, 1580 (Fed. Cir. 1983), *cert. denied,* 465 U.S. 1022 (1984). In *Koyo Seiko Co. v. United States,* 16 CIT 539, 542–43, 796 F. Supp. 1526, 1530 (1992), this Court upheld Commerce's treatment of Koyo's post-sale price adjustments as indirect selling expenses because these post-sale price adjustments could not be directly correlated with sales of the subject merchandise using verified cost and sales information. This Court is of the same opinion in the case at hand.

Furthermore, subsequent to the filing of briefs in this case, at an oral argument held on April 22, 1993 in a similar case, counsel for Koyo stated that it had changed its position and conceded this issue. *See Koyo Seiko,* 17 CIT at 476, 840 F. Supp. 136 (1993). Therefore, Commerce's decision to treat Koyo's post-sale price adjustments, rebates and warranties as indirect selling expenses is affirmed.

## 3. *Home Market Credit Calculation:*

Koyo claims that Commerce ignored Koyo's calculations of home market credit expenses and instead used the best information available when it computed indirect selling expenses. In the Final Results, Commerce rejected two aspects of Koyo's credit expense calculation. First, Koyo calculated an average number of days from its top twenty customers by averaging the minimum and maximum number of days that each of these customers' payments remained outstanding. Commerce, however, determined that an average based upon only two transactions would not be representative of actual payment experience since each customer engaged in numerous transactions during the review period. *Final Results,* 56 Fed. Reg. at 26,058.

Commerce now concedes that resort to BIA was improper because Koyo was not given sufficient opportunity to correct its deficient responses. Commerce also concedes to a remand on this issue so that Commerce may request additional information from Koyo in order to make a

more accurate determination of Koyo's credit expenses. Therefore, this case is remanded to Commerce so that it may request additional information from Koyo.

### 4. *Indirect Selling Expenses by Related Distributors:*

Koyo also claims that Commerce improperly rejected its calculation of indirect selling expenses in the home market. Koyo reported sales by its related distributors to its customers rather than by Koyo's sales to the distributors. Commerce subsequently aggregated the indirect selling expenses and then allocated the total across all of Koyo's sales. Commerce now concedes that it should have allocated the indirect selling expenses to specific sales and, therefore, agrees that this issue should be remanded to Commerce for that purpose.

### 5. *Cost of Production Calculations:*

Finally, Koyo claims that Commerce improperly rejected its cost of production calculations, claiming that Commerce adjusted Koyo's figures only for material cost variance and not for the manufacturing cost variance. Koyo further asserts that its questionnaire responses show that Koyo did include a variance allowance for both material cost and manufacturing. *Plaintiffs' Motion* at 24–25.

Upon reexamining this issue, Commerce concedes that it should have afforded Koyo an opportunity to clarify its questionnaire responses and agrees that this issue should be remanded so that it may request additional information for that purpose.

#### CONCLUSION

In accordance with the foregoing opinion, plaintiffs' motion for judgment on the agency record is granted in part and this case is remanded to Commerce to (1) request additional information from Koyo in order to make a more accurate determination of Koyo's credit expenses; (2) determine whether the cost of production figures submitted by Koyo are properly adjusted for material cost variance; and (3) allocate Koyo's indirect selling expenses to specific sales. Plaintiffs' motion is denied in all other respects. Remand results are to be filed within sixty days (60) of the date this opinion is entered. Comments to Remand results are to be filed within thirty (30) days thereafter, and responses to comments are to be filed within fifteen (15) days of the date comments are filed.