**KOYO SEIKO CO., LTD. and Koyo Corporation of U.S.A., Plaintiffs,**

v.

**The UNITED STATES and the United States Department of Commerce, Defendants,**

and

**The Timken Company, Defendant–Intervenor.**

Court No. 92–03–00170.
Slip Op. 94–127.

United States Court of International Trade.

Aug. 11, 1994.

Powell, Goldstein, Frazer & Murphy, Peter O. Suchman, Susan P. Strommer, Niall P. Meagher, T. George Davis and Elizabeth C. Hafner, Washington, DC, for plaintiffs, Koyo Seiko Co., Ltd. and Koyo Corp. of U.S.A.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Velta A. Melnbrencis, Asst. Director, of counsel: Joan L. MacKenzie, Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., John M. Breen, Amy S. Dwyer and Margaret E.O. Edozien, Washington, DC, for defendant-intervenor, The Timken Co.

## OPINION

TSOUCALAS, Judge:

Plaintiffs, Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A. ("Koyo"), challenge certain aspects of the Department of Commerce, International Trade Administration's ("Commerce") final results of the administrative review of certain tapered roller bearings ("TRBs") from Japan. *Tapered Roller Bearings, Four Inches or Less In Outside Diameter, and Components Thereof, From Japan; Final Results of Antidumping Duty Administrative Review* ("*Final Results*"), 57 Fed. Reg. 4,975 (Feb. 11, 1992).

## Background

In 1987, Commerce published an antidumping duty order on TRBs from Japan. *Antidumping Duty Order; Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From Japan,* 52 Fed.Reg. 37,352 (Oct. 6, 1987). In 1991, Commerce published the preliminary results of the 1989–90 administrative review. *Tapered Roller Bearings, Four Inches or Less in Outside Diameter, and Components Thereof, From Japan; Preliminary Results of Antidumping Duty Administrative Review,* 56 Fed.Reg. 23,278 (May 21, 1991). On February 11, 1992, Commerce published its final results in this proceeding, covering the period August 1, 1989 through July 31, 1990. *Final Results,* 57 Fed.Reg. 4,975. In 1992, Commerce published an amendment to the final results for the 1989–90 administrative review. *Tapered Roller Bearings, Four Inches or Less in Outside Diameter, and Components Thereof, From Japan; Amended Final Results of Antidumping Duty Administrative Review,* 57 Fed.Reg. 9,105 (March 16, 1992).

Koyo moves pursuant to Rule 56.2 of the Rules of this Court for judgment on the agency record, alleging the following actions by Commerce were unsupported by substantial evidence on the agency record and not in accordance with law: (1) failure to use annualized weighted-average U.S. prices ("USPs") when it used annualized weighted-average foreign market values ("FMVs"); (2) treatment of U.S. discounts as direct selling expenses while treating home market post-sale price adjustments as indirect selling expenses; (3) treatment of home market warranty expenses as indirect selling expenses; (4) comparison of sales across different levels of trade; (5) deduction of home market packing expenses from gross home market prices for purposes of comparing gross home market prices to cost of production data which included home market packing expenses; and (6) treatment of tapered roller bearing sets with one Japan-made component as "further manufactured" merchandise and use of best information available ("BIA") in calculating dumping margins for those sets. *Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Judgment on the Agency Record ("Koyo's Brief")* at 11–41.

## Discussion

The Court's jurisdiction over this matter is derived from 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581(c) (1988).

A final determination by Commerce in an administrative proceeding will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

### 1. Averaged FMV

■ Koyo alleges Commerce inappropriately compared averages of FMV representing home market sales over a twelve-month period with actual U.S. prices, instead of with similarly averaged U.S. prices. *Koyo's Brief* at 11–21.

Koyo maintains such an inherently unfair comparison between individual prices and averaged prices distorts the dumping margins calculated and is contrary to the antidumping statute. *Id.* at 11–15. Citing the provision permitting Commerce to average U.S. prices and asserting that U.S. prices were as stable as FMVs, Koyo argues that Commerce abused its discretion by not averaging U.S. prices and thereby inflating Koyo's dumping margins in this comparison. *Id.* at 13–19.

Commerce maintains it acted within its discretion and in accordance with the statutory scheme, which does not require it to average USP whenever it decides to average FMV. *Defendants' Memorandum in Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record ("Defendants' Brief")* at 7–18. Commerce asserts that to prevent the masking of dumping, it followed its long-standing practice of averaging USP only when perishable products are sold at distress prices as a result of necessity and

not of unfair competition. *Id.* at 9–11. Commerce argues its averaging was reasonable as the home market prices over the entire review period were stable. *Id.* at 15–18.

Defendant-intervenor, The Timken Company ("Timken"), echoes the arguments made by Commerce. *Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Judgment on the Agency Record ("Timken's Brief")* at 11–18.

The statute at issue here grants Commerce exclusive discretion to use averaging techniques as long as a significant volume of sales is involved and the averaging is representative:

> [T]he administering authority may—
>
> (1) use averaging or generally recognized sampling techniques whenever a significant volume of sales is involved or a significant number of adjustment to prices is required, and
>
> (2) decline to take into account adjustments which are insignificant in relation to the price or value of the merchandise.
>
> **(b) Selection of samples and averages**
>
> The authority to select appropriate samples and averages shall rest exclusively with the administering authority; but such samples and averages shall be representative of the transactions under investigation.

19 U.S.C. § 1677f–1 (1988). There is no provision that requires Commerce to average USP once it has averaged FMV.

In the case at hand, Commerce conducted two studies to ensure the averaging of FMV would be representative. *Final Results,* 57 Fed.Reg. at 4,977. That there was a significant volume of sales involved is not at issue. Thus, Commerce's decision to average foreign market value was in accordance with law.

Acting within its discretion, Commerce declined Koyo's invitation to average USP: "[Averaging USP] would allow a foreign producer to mask dumping margins by offsetting dumped prices with prices above FMV.... Except in instances where the Department has conducted reviews of seasonal merchandise which has very significant price fluctuations due to perishability ...,

the idea of averaging U.S. prices has been rejected." *Id.*

This Court has already decided this issue and adheres to its decisions in *Koyo Seiko Co. and Koyo Corp. of U.S.A. v. United States,* 17 CIT ——, 834 F.Supp. 431 (1993) and *Koyo Seiko Co. and Koyo Corp. of U.S.A. v. United States,* 17 CIT ——, 840 F.Supp 136 (1993), *aff'd,* 20 F.3d 1156 (Fed. Cir.1994), wherein this Court held the averaging of FMVs without any averaging of USP not to be an abuse of discretion. Therefore, the determination of Commerce as to this issue is affirmed.

### 2. *Home Market Post–Sale Price Adjustments and U.S. Discounts*

■ In its brief, Koyo argues Commerce erred in treating Koyo's home market post-sale price adjustments as indirect selling expenses. *Koyo's Brief* at 21–25. In its *Reply of Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A. to Oppositions to Plaintiffs' Motion for Judgment on the Agency Record ("Reply Brief")*, Koyo withdraws its claim for treatment of home market post-sale price adjustments as direct selling expenses, as discussed with counsel for defendants and Timken. *Reply Brief* at 2. Accordingly, this Court will not further address this issue.

Koyo also argues that Commerce erred in treating U.S. discounts as direct selling expenses. *Koyo's Brief* at 21–25. Koyo maintains it was an abuse of discretion for Commerce to treat U.S. discounts differently from home market post-sale price adjustments since U.S. discounts were granted and reported on virtually the same basis as were home market post-sale price adjustments. *Id.* Koyo asserts fairness requires that these costs be treated in the same manner in both markets. *Id.* at 23. According to Koyo, different treatment will result in a distorted comparison and the creation or widening of dumping margins on some sales. *Id.* at 24.

Defendants respond that Commerce properly made an adverse assumption and treated U.S. discounts as direct expenses, given that Koyo failed to provide sufficient information demonstrating that its adjustment was indirect and that it is to Koyo's advantage to have U.S. discounts treated as indirect ex-

penses. *Defendants' Brief* at 22–24. Timken adds that there is nothing inherently unfair in Commerce not treating U.S. discounts and home market post-sale price adjustments in the same manner. *Timken's Brief* at 22–24.

■ This Court finds that Koyo's arguments are without merit. It is established that U.S. selling expenses are presumed to be direct and the burden of proving otherwise is on the respondent. *Timken Co. v. United States*, 11 CIT 786, 804, 673 F.Supp. 495, 512–13 (1987); *see also Torrington Co. v. United States*, 17 CIT ——, ——, ——, 832 F.Supp. 365, 376, 378 (1993); *see also Tapered Roller Bearings, Finished and Unfinished, and Parts Thereof, From Japan; Final Results of Antidumping Duty Administrative Review*, 57 Fed.Reg. 4,951, 4,955 (Feb. 11, 1992); *see also Tapered Roller Bearings, Four Inches or Less in Outside Diameter, and Certain Components Thereof, From Japan; Final Results of Antidumping Duty Administrative Review*, 56 Fed.Reg. 65,228, 65,229 (Dec. 16, 1991).

A contrary practice would destroy any incentive a respondent has to provide Commerce with actual U.S. selling expense information. *Torrington Co.*, 17 CIT at ——, 832 F.Supp. at 376. An indirect U.S. selling expense can be "offset" by home market indirect selling expenses. 19 C.F.R. § 353.56(b)(2) (1992). Such an offset, which is not permitted with U.S. selling expenses classified as direct, increases allowable deductions from foreign market value and reduces dumping margins. It would therefore be to the respondent's advantage to fail to provide Commerce with information directly relating U.S. selling expenses to sales of covered merchandise. *Timken Co.*, 11 CIT at 804, 673 F.Supp. at 513.

As Koyo has failed to overcome the presumption that the U.S. discounts and rebates are direct selling expenses, this issue is hereby affirmed.

### 3. *Home Market Warranty Expenses*

In its brief, Koyo argues Commerce erred in treating Koyo's home market warranty expenses as indirect selling expenses.

*Koyo's Brief* at 25–27. In its *Reply Brief*, Koyo withdraws its claim for treatment of home market warranty expenses as direct selling expenses. *Reply Brief* at 2. Accordingly, this Court will not further address this issue.

### 4. *Comparison of Sales Across Different Levels of Trade*

■ Koyo alleges that in choosing such or similar sales for comparison, Commerce disregarded 19 C.F.R. § 353.58 (1992) by comparing sales across different levels of trade when sales at the same level of trade were available. *Koyo's Brief* at 27–35. Koyo states that it makes sales in the U.S. and Japan at two significantly different levels of trade—to original equipment manufacturers and to the aftermarket for replacement parts. *Id.* at 28. Koyo asserts that Commerce improperly and unfairly considered sales of identical merchandise at different levels of trade *before* considering sales of the most similar merchandise at the same level of trade. *Id.* at 29–33. Koyo maintains that this methodology is contrary to the statute and regulation, which require Commerce to search for comparisons of sales at the same level of trade before crossing over to compare sales at a different level of trade. *Id.*

Defendants defend Commerce's methodology as consistent with law and with prior decisions of this Court which state level of trade is not a requirement for selecting such or similar merchandise. *Defendants' Brief* at 26–32. Commerce asserts that it first searched for identical merchandise at the same level of trade and then at different levels of trade, making adjustments for differences that affect price comparability across different levels of trade. *Id.* at 28–29. Timken agrees with defendants' arguments. *Timken's Brief* at 27–31.

19 C.F.R. § 353.58 states that Commerce "normally will calculate foreign market value and United States price based on sales at the same commercial level of trade." If such sales are insufficient for an adequate comparison, Commerce must calculate FMV "based on sales of such or similar merchandise at the most comparable commercial level of trade as sales of the merchandise and make

appropriate adjustments for differences affecting price comparability." *Id.*

Based upon data submitted by Koyo regarding the existence of two levels of trade, Commerce initially attempted to make its comparison of sales at the same level of trade and, when no identical home market sales were discovered, Commerce then searched the next level of trade for identical merchandise. Commerce then searched the same level of trade for most similar merchandise and, finally, the next level of trade for most similar merchandise. *Defendants' Brief* at 28–29. Therefore, Koyo's argument that Commerce failed to fulfill its obligation to search the same level of trade is erroneous.

This Court has on several occasions affirmed Commerce's selection of home market merchandise at levels of trade different from the U.S. merchandise to which it is compared. *Koyo Seiko Co. v. United States,* 16 CIT 539, 545, 796 F.Supp. 1526, 1532 (1992), *vacated, remanded,* 16 CIT 788, 806 F.Supp. 1008 (1992); *NTN Bearing Corp. of America v. United States,* 14 CIT 623, 634, 747 F.Supp. 726, 736 (1990); *Timken Co.,* 11 CIT at 793, 673 F.Supp. at 504.

■ In addition, this Court has previously specifically rejected the argument put forth by Koyo: "there is no statutory mandate requiring Commerce to remain within the same level of trade while effecting its 'such or similar merchandise' determination. [Citation omitted.] Plaintiffs, therefore, have no basis for requesting that the Court require Commerce to limit its comparisons by the level of trade in which the sales occur." *NTN Bearing Corp.,* 14 CIT at 634, 747 F.Supp. at 736.

Therefore, Commerce's comparison of sales across different levels of trade was reasonable and in accordance with law.

■ Koyo also contends that Commerce's methodology is contrary to Article 2(6) of the Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade ("GATT") (1979). *Koyo's Brief* at 33–35.

Article 2(6) of the GATT, titled "Determination of Dumping," states that, in the context of price comparisons in antidumping proceedings, prices "shall be compared at the same level of trade" and "[d]ue allowance shall be made in each case, on its merits, for the differences in conditions and terms of sale, for the differences in taxation, and for the other differences affecting price comparability."

This Court has already addressed this very issue in *Koyo Seiko Co. Ltd. and Koyo Corp. of U.S.A. v. United States,* 17 CIT ——, —— – ——, 810 F.Supp. 1287, 1290–91 (1993), wherein the Court held first, that compliance with this GATT provision does not require comparison of sales at the same level of trade since the provision itself clearly makes exception and allows for the adjustment of prices when sales are made under different terms and conditions and, second, that even if Commerce's methodology were contrary to this provision, domestic law, not the GATT, is controlling. The Court has been presented with no new argument and adheres to its previous decision regarding this issue.

Therefore, Commerce's comparison of merchandise across different levels of trade is affirmed.

### 5. *Home Market Packing Expenses*

■ Koyo asserts Commerce improperly compared cost of production, which included home market packing expenses, with gross home market prices, from which packing expenses had been deducted. *Koyo's Brief* at 35–37. Koyo states that it reported cost of production data to Commerce which excluded home market packing expenses and that Commerce then added packing expenses to that data while deducting packing expenses from gross home market price. *Id.* at 36. As a result, Koyo asserts, Commerce will disregard home market sales that it otherwise would not have disregarded. *Id.* Koyo urges this Court to remand this issue so that Commerce can either use Koyo's cost of production data as Koyo reported it, without adding packing expenses, or correct its computer program so that packing expenses are not deducted from gross home market prices. *Id.* at 37.

Commerce requests this issue be remanded for reconsideration or explanation. *Defendants' Brief* at 32. Timken concurs that this issue should be remanded for reconsideration and agrees with Koyo's correction of the computer program. *Timken's Brief* at 31. As there is no explanation on the record regarding the treatment of packing expenses, this Court remands this issue for reconsideration by Commerce.

### 6. *"Further Manufactured" Merchandise*

Koyo argues Commerce improperly deemed certain TRB sets with one Japan-made component as "further manufactured" merchandise, consequently using best information available in calculating dumping margins for those sets. *Koyo's Brief* at 37–41. Koyo asserts that the adjustment Commerce is required to make for further manufacturing of merchandise after importation was inappropriate in this case because the Japan-made components were merely put in the same box as the other component in order to sell the components as a TRB set. *Id.* at 38. According to Koyo, the individual components can also be sold separately or can be imported separately to be sold as a set. *Id.* In short, Koyo argues that the process undergone by the merchandise, addition of a component to create a TRB set, simply does not amount to further manufacturing. *Id.* at 40–41.

Koyo contends that, because Commerce never requested the data, Commerce should not have applied BIA for increased value due to further manufacturing. *Id.* at 39. In any event, Koyo maintains there were no further manufacturing expenses because no materials were added to either component, no new or different product was created and the composition of the components is unchanged. *Id.*

Defendants respond that Commerce acted properly since the statute at issue, 19 U.S.C. § 1677a(e) (1988), does not define "process of manufacture or assembly" and Commerce is traditionally granted broad discretion where Congress is silent. *Defendants' Brief* at 32–35. Defendants argue that putting components in a box results in labor costs. *Id.* at 34–35. These costs and the fact that the

product is sold as a TRB set, and not as a cup or cone, clearly indicate that the merchandise was further manufactured or assembled. *Id.* at 35. Defendants maintain Commerce was required to resort to BIA because Koyo had stated it was unable to produce complete information regarding the increased value of the merchandise. *Id.*

Timken agrees it is evident that the merchandise at issue has undergone further assembly after importation and is therefore subject to treatment as further manufactured merchandise. *Timken's Brief* at 32–36. Timken refutes Koyo's assertion that Commerce never requested further manufacturing data by citing Commerce's Section C questionnaire to Koyo wherein Commerce requested such information. *Id.* at 34. Since Koyo indicated it was unable to give the requested information, Timken argues BIA was properly applied. *Id.* at 36.

■ First, this Court must determine if further "manufacture or assembly" took place for the purposes of 19 U.S.C. § 1677a(e)(3).

Commerce must reduce exporter's sales price by:

> any increased value, including additional material and labor, resulting from a process of manufacture or assembly performed on the imported merchandise after the importation of the merchandise and before its sale to a person who is not the exporter of the merchandise.

19 U.S.C. § 1677a(e)(3); *see also* 19 C.F.R. § 353.41(e)(3) (1992) (stating that Commerce generally will determine the increased value from "the cost of material, fabrication, and other expenses incurred" in production or assembly).

The statute requires Commerce to make an adjustment when there is "any" increased value resulting from manufacture or assembly. 19 U.S.C. § 1677a(e)(3). There is no requirement, as Koyo suggests, that materials be added to component parts, the components be turned into new products or the composition of the components be altered. The merchandise at issue was placed in a box with another component and sold as a set. This clearly qualifies as additional material

or labor and a "process of assembly." Therefore, Commerce was required to make an adjustment for further manufacturing of merchandise after importation pursuant to 19 U.S.C. § 1677a(e)(3).

■ Second, this Court must determine if Commerce appropriately applied BIA for the increased value due to further manufacturing. Commerce is required to use BIA whenever a party refuses or is unable to produce information requested. 19 U.S.C. § 1677e(c) (1988). In this case, Commerce requested extensive information regarding further processing and assembly of merchandise after importation to the United States. Public Document 20, frames 494–95. In response, Koyo stated it was unable to produce complete information regarding the increased value of the merchandise. *Response to Antidumping Questionnaire Section C by Koyo Seiko Co., Ltd. and American Koyo Corporation, a Division of Koyo Corporation of U.S.A. for the Administrative Review Period August 1, 1988 through July 31, 1989* at 2, n. 1. Therefore, Commerce was required to apply BIA for the increased value due to further manufacturing.

For the reasons set out above, Commerce's treatment of TRB sets as further manufactured merchandise and use of BIA is hereby affirmed.

### Conclusion

In accordance with the foregoing opinion, this case is remanded to Commerce for reconsideration of its deduction of home market packing expenses from gross home market prices. Commerce's determination is affirmed in all other respects. Remand results are due within ninety (90) days of the date this opinion is entered. Any comments or responses are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.