**ORDERED** that defendant's motion for summary judgment is granted; and it is further

**ORDERED** that this case is hereby dismissed.

**NIPPON PILLOW BLOCK SALES CO., LTD. and FYH Bearing Units USA, Inc., Plaintiffs,**

**Emerson Power Transmission Corporation, Plaintiff–Intervenor,**

v.

**UNITED STATES, Defendant,**

**The Torrington Company; Federal–Mogul Corporation, Defendant–Intervenors.**

Slip Op. 95–162.
Court No. 92–07–00455.

United States Court of International Trade.

Sept. 22, 1995.

Michael Brown for plaintiffs Nippon Pillow Block Sales Co., Ltd. and FYH Bearing Units USA, Inc.

Baker & McKenzie, Kevin M. O'Brien and Michael A. Lawrence, for plaintiff-intervenor Emerson Power Transmission Corporation.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Marc E. Montalbine; of counsel: Stephen J. Claeys and David J. Ross, Attorneys, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.

Stewart and Stewart, Terence P. Stewart, James R. Cannon, Jr., John M. Breen and Patrick J. McDonough, for defendant-intervenor The Torrington Company.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, Larry Hampel and Joseph A. Perna, V, for defendant-intervenor Federal–Mogul Corporation.

### *OPINION*

TSOUCALAS, Judge:

Plaintiffs, Nippon Pillow Block Sales Company, Ltd., and FYH Bearing Units USA, Inc. (collectively "Nippon"), commenced this action challenging certain aspects of the United States Department of Commerce, International Trade Administration's ("Commerce") final results of its second administra-

tive review of certain antifriction bearings and parts thereof from Japan. *See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews ("Final Results"),* 57 Fed.Reg. 28,360 (June 24, 1992).

*Background*

On June 28, 1991, Commerce initiated an administrative review of the antidumping duty order on ball bearings, cylindrical roller bearings, spherical plain bearings, and parts thereof from Japan, for the period of May 1, 1990 to April 30, 1991. *See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom; Initiation of Antidumping Administrative Reviews,* 56 Fed. Reg. 29,618 (1991).

On March 31, 1992, Commerce published the preliminary determination of its second administrative reviews, for the period of May 1, 1990 to April 30, 1991. *See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews,* 57 Fed. Reg. 10,868 (1992).

On June 24, 1992, Commerce published the final results of its second administrative reviews. *See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews,* 57 Fed.Reg. 28,360 (1992).

Plaintiffs move pursuant to Rule 56.2 of the Rules of this Court for judgment on the agency record, alleging the following determinations by Commerce were unsupported by substantial evidence on the agency record and not in accordance with law: (1) to use annual weighted-average foreign market values ("FMVs"); and (2) to use total best information available ("BIA") to compute plaintiffs' dumping margin.

*Discussion*

The Court's jurisdiction in this action is derived from 19 U.S.C. § 1516a(a)(2) (1988) and 28 U.S.C. § 1581(c) (1988).

■ The Court must uphold Commerce's final determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with the law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). "It is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on the grounds of a differing interpretation of the record." *Timken Co. v. United States,* 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed.Cir.1990).

1. *Use of annual weighted-average FMVs*

■ Plaintiffs contend that Commerce failed to meet its statutory burden, pursuant to the Tariff Act of 1930 (the "Act"), to demonstrate that annual weighted-average FMVs are representative of the prices of home market sales made at the same time as United States sales. *Plaintiffs' Memorandum in Support of Motion for Judgment Upon the Agency Record ("Plaintiffs' Brief")* at 7–8. Specifically, plaintiffs claim that Commerce's actions were inconsistent with sections 773(a) and 777A of the Act, codified at 19 U.S.C. § 1677b(a) (1988) and 19 U.S.C. § 1677f–1 (1988), respectively. *Plaintiffs' Brief* at 7–11. According to plaintiffs, 19 U.S.C. § 1677f–1 permits Commerce to use averages only if they are representative of the underlying transaction. *Id.* at 8. Plaintiffs also emphasize the language of 19 U.S.C. § 1677b(a) which defines FMV as follows: "The foreign market value of imported merchandise shall be the price, at the time such merchandise is first sold within the United States...." Plaintiffs contend that the following reasoning provided by Commerce for its decision to use annual weight-

ed-averages was insufficient to meet the statutory requirements:

> Section 777A of the Tariff Act requires the Department to ensure that samples and averages shall be representative of the transactions under review. Therefore, before adopting the use of an annual weighted-average FMV, we conducted two studies on prices to ensure that the transactions, and thus the results produced, would be representative. First, we compared the monthly weighted-average price to the annual weighted-average price. We found that the annual weighted-average price for more than 90 percent of the products sold was within 10 percent of the monthly weighted-average price. Second, we tested whether home market prices of the subject merchandise consistently rose or fell during the period of review (POR). We found that no significant correlation existed between price and time. That is, prices did not consistently rise or fall so as to make annual weighted-average prices unrepresentative of home market prices.

*Final Results,* 57 Fed.Reg. at 28,368.

Plaintiffs maintain that the first study described by Commerce is flawed because it does not consider up to 10% of monthly prices which may vary by more than 10%. *Plaintiffs' Brief* at 9–11. Plaintiffs allege that Commerce's methodology may result in annual weighted-averages that vary vastly from the monthly weighted-averages of home market sales contemporaneous to United States sales. *Id.* at 10–11.

In addition, plaintiffs contend that the second test used by Commerce, the Pearson correlation coefficient, does not indicate that the annual weighted-average FMVs are representative of any particular prices during the period of review. *Id.* at 12–13. Plaintiffs explain that the Pearson correlation coefficient only measures whether there is a consistent increase or decrease in price over time. *Id.* Plaintiffs conclude that the fact that the prices fluctuate, as indicated by the lack of a correlation, does not mean that the annual average prices are representative of the prices of home market sales contemporaneous with United States sales. *Id.* at 14.

In rebuttal, Commerce argues that pursuant to 19 U.S.C. § 1677f–1(a), averaging techniques are appropriate whenever a significant volume of sales is involved. *Defendant's Memorandum in Opposition to Plaintiffs' Motions for Judgment on the Agency Record ("Defendant's Brief")* at 27–28. Commerce also asserts that its actions were consistent with the Act since it conducted two studies before deciding to use annual weighted-averages. *Defendant's Brief* at 28–29. Commerce argues that plaintiffs' contentions are based on hypothetical numbers that fail to demonstrate that the use of annual weighted-average FMVs would actually create higher dumping margins. *Id.* at 29.

Commerce further responds that the Pearson correlation coefficient guaranteed that there would be no vast difference in prices of merchandise sold during different times of the period of review. *Id.* According to Commerce, the two tests used in tandem were sufficient to ensure that the use of annual weighted-averages would not cause a systematic distortion of dumping margins. *Id.* at 29–30.

The Torrington Company ("Torrington") and Federal–Mogul Corporation ("Federal–Mogul") essentially support Commerce's decision to use annual weighted-average FMVs. *The Torrington Company's Response to Plaintiffs' Motion for Judgment on the Agency Record ("Torrington's Brief")* at 14–20; *Opposition of Federal–Mogul Corporation, Defendant–Intervenor, to Plaintiffs' Motion for Judgment Upon the Agency Record ("Federal–Mogul's Brief")* at 13–16.

■ According to 19 U.S.C. § 1677f–1:

> For the purpose of determining United States price or foreign market value under sections 1677a and 1677b of this title, and for purposes of carrying out annual reviews under section 1675 of this title, the administering authority may—
>
> (1) use averaging or generally recognized sampling techniques whenever a significant volume of sales is involved or a significant number of adjustments to prices is required, and

(2) decline to take into account adjustments which are insignificant in relation to the price or value of the merchandise.

**(b) Selection of samples and averages**

*The authority to select appropriate samples and averages shall rest exclusively with the administering authority; but such samples and averages shall be representative of the transactions under investigation.*

(Emphasis added). The language of the statute clearly grants Commerce discretion to decide when to average prices as long as they are representative of the transactions under investigation. As indicated in the Final Results, Commerce conducted two studies to determine whether the averages were representative of the underlying transactions. 57 Fed.Reg. at 28,368. In *Koyo Seiko Co. v. United States,* 17 CIT 474, 476, 840 F.Supp. 136, 138, *aff'd,* 20 F.3d 1156 (Fed. Cir.1994), this Court found that Commerce behaved reasonably when it used annual weighted-averages based on studies that are identical to the ones in the case at bar. In *Koyo Seiko,* this Court found that Commerce's decision to use annual weighted-averages based on the two tests described by Commerce was "reasonable and representative." *Koyo Seiko,* 17 CIT at 476, 840 F.Supp. at 139. In light of the decision in *Koyo Seiko,* this Court finds that Commerce's determination to use annual weighted-averages in the present case was within Commerce's discretion pursuant to 19 U.S.C. § 1677f–1 and in accordance with law.

**2.** *Use of best information available*

■ In this review, Commerce used as BIA the "all others" rate from the less-than-fair-value investigation that was used in the first administrative review. *Final Results,* 57 Fed.Reg. at 28,379. Plaintiffs contend that Commerce should not have resorted to use of BIA since plaintiffs provided Commerce with all information pertaining to home market sales contemporaneous to United States sales. *Plaintiffs' Brief* at 15. According to plaintiffs, FMVs should have been calculated on the basis of the monthly averages of contemporaneous sales. *Id.* Plaintiffs maintain that since they reported contemporaneous sales information, the use of BIA was inappropriate.

Plaintiffs further assert that even if Commerce was justified in using BIA, it should not have used total BIA. *Id.* at 15–17. Plaintiffs contend that Commerce should have calculated the antidumping margins by using the contemporaneous monthly data submitted by plaintiffs and then adjusting these margins by the maximum amount by which the monthly averages were permitted to vary from the annual averages. *Id.* at 16. Plaintiffs conclude that Commerce should have used, as BIA, the margins calculated from the contemporaneous monthly data multiplied by 110%. *Id.*

Commerce contends that it properly resorted to use of the "all others" rate from the first administrative review as BIA. *Defendant's Brief* at 48. Commerce rejects plaintiffs' proposed methodology as merely rewarding plaintiffs for their failure to report requested information. *Id.* According to Commerce, the determination of what information is necessary for an administrative review is to be made by Commerce, not the respondents. *Id.* at 48–49.

Commerce further responds that plaintiffs' refusal to report the requested information prevented Commerce from determining whether annual weighted-averages or monthly weighted-averages would ultimately be used in calculating FMVs. *Id.* at 49. In addition, Commerce contends that it could not determine whether plaintiffs' home market sales were made at below the cost of production. *Id.* Commerce concludes that, in light of the above, it should not be expected to rely upon only 20% of the requested home market sales data in order to calculate antidumping margins. *Id.*

Torrington and Federal–Mogul essentially support Commerce's decision to use total BIA to compute the dumping margin. *Torrington's Brief* at 27–29; *Federal–Mogul's Brief* at 16–17.

Section 1677e(c) of Title 19, United States Code (1988), states that Commerce "shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form

required, or otherwise significantly impedes an investigation, use the best information otherwise available." In addition, Commerce's regulations instruct the Secretary to use BIA whenever Commerce:

(1) Does not receive a complete, accurate, and timely response to the Secretary's request for factual information; or

(2) Is unable to verify, within the time specified, the accuracy and completeness of the factual information submitted.

19 C.F.R. § 353.37(a) (1992).

Since this Court has already determined that Commerce's decision to use annual weighted-averages is in accordance with law, plaintiffs' assertion that they provided Commerce with all necessary information pertaining to home market sales is without merit. Plaintiffs concede that they reported home market sales for only those sample months which corresponded to the months in which they reported United States sales or, if there were no corresponding sales in a particular month, for either the prior sample month or the immediately following sample month. *Plaintiffs' Brief* at 6. This information was clearly insufficient for computing annual weighted-average FMVs. Plaintiffs' failure to submit "complete" information justified Commerce's use of BIA. Thus, Commerce's decision to resort to BIA was supported by substantial evidence and in accordance with law.

■ In addition, plaintiffs' alternative argument is unpersuasive. Commerce stated its reasons for resorting to total BIA as follows:

We have determined that total BIA will be used for NPBS in the final results of review. This decision is based on the fact that NPBS did not report requested HM sales information in a timely manner and in the form required. NPBS failed to report over 80 percent of its home market sales in its response to the Department's questionnaire. A home market database containing only 20 percent of required sales is not an adequate basis for analysis and calculation of foreign market value.

*Final Results,* 57 Fed.Reg. at 28,380.

The Court finds that Commerce's explanation is valid. This Court, in a related case, has already determined that plaintiffs failed to provide Commerce with all of the information requested in the questionnaire supplied by Commerce. *Emerson Power Transmission Corp. v. United States,* 19 CIT ——, ——, 903 F.Supp. 48, 52–54 (1995). *See also Questionnaire,* PR Document No. 26 at 12–13. In light of plaintiffs' failure to submit all of the requested information, the contention that Commerce should have used the reported sales and adjusted them accordingly to compute the dumping margin is inconsistent with the purpose of the BIA scheme. In *Atlantic Sugar, Ltd. v. United States,* 744 F.2d 1556, 1560 (1984), the Court of Appeals for the Federal Circuit ("CAFC") referred to BIA as "an investigative tool, which that agency may wield as an informal club over recalcitrant parties or persons whose failure to cooperate may work against their best interest."

■ Furthermore, this Court has recognized that Commerce has broad discretion in determining what information to use once it establishes that the application of BIA is appropriate. *See Emerson,* 19 CIT at ——, 903 F.Supp. at 56–57 (finding Commerce's use of the "all others" rate as BIA appropriate as applied to Nippon). In *Allied–Signal Aerospace Co. v. United States,* 996 F.2d 1185, 1191 (Fed.Cir.1993), the CAFC noted that "because Congress has 'expressly left a gap for the agency to fill' in determining what constitutes the best information available, the ITA's construction of the statute must be accorded considerable deference" (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984)). Thus, it is well-established that Commerce's interpretation of what data should be used as BIA deserves considerable deference.

Commerce has interpreted BIA as a rule of adverse inference which establishes a presumption that the highest prior margins are the best information available. *Rhone Poulenc, Inc. v. United States,* 899 F.2d 1185, 1190–91 (Fed.Cir.1990). This presumption may be rebutted by the respondent with evidence showing the actual margin to be

less. In the present case, Commerce used as BIA the "all others" rate from the first administrative review. *Final Results,* 57 Fed. Reg. at 28,379. This Court has already determined that Commerce's choice was proper. *See Emerson,* 19 CIT at ——, 903 F.Supp. at 56–57. As in *Emerson,* plaintiffs fail to present evidence showing the actual margin to be less than the margin determined on the basis of BIA. Instead, plaintiffs offer calculations based upon only 20% of the necessary information. Moreover, due to plaintiffs' failure to provide complete information, Commerce was unable to determine whether it would have ultimately used annual weighted-averages to compute plaintiffs' dumping margin. *See Federal–Mogul's Brief* at 12. Thus, there is insufficient evidence to determine whether the actual margin would have been less than the margin computed using the "all others" rate.

In addition, Commerce is correct in its assertion that use of plaintiffs' incomplete questionnaire response would only reward it for failing to report requested information. In *Persico Pizzamiglio, S.A. v. United States,* 18 CIT ——, ——, 1994 WL 132109, Slip Op. 94–61 at 17–19 (Apr. 14, 1994), this court rejected the argument that Commerce should have used some of the verified information submitted by plaintiff instead of relying on unverified information as BIA. The court reasoned as follows:

> If the court were to accept Persico's argument, such result might encourage respondents to analyze the information Commerce would employ as BIA should that agency ignore a questionnaire response for being unresponsive or incomplete. Presumably, the respondent would then selectively disclose only that information which would decrease a dumping margin calculated from BIA.... In this way, it would be in respondents' best interest to only partially respond to Commerce's inquiry.... By allowing Commerce to reject a submission *in toto,* the court encourages full disclosure by the respondent, because only full disclosure will lead to a dumping mar-

gin lower than that established by employing BIA.

*Persico Pizzamiglio,* 18 CIT at ——, 1994 WL 132109 at *8, Slip Op. 94–61 at 18–19. This reasoning applies to the case at bar as well. If Commerce were required to use the small portion of the requested information that Nippon submitted, there would be no incentive for Nippon to provide Commerce with complete information since the submission of partial information would result in a decreased dumping margin.

In sum, this Court finds that Commerce's decision to use total BIA is supported by substantial evidence and in accordance with law.

### Conclusion

In accordance with the foregoing opinion, this Court, after due deliberation and a review of all papers in this case, finds that Commerce's actions were in accordance with law and supported by substantial evidence. For the reasons stated above, the Final Results are affirmed and plaintiffs' motion is denied in all respects. This case is hereby dismissed.

### JUDGMENT

This case having been duly submitted for a decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that plaintiffs' motion for judgment on the agency record is denied in all respects and that Commerce's determination is affirmed in all respects; and it is further

**ORDERED** that this case is hereby dismissed.